Edward J. MEYER, Marion E. Meyer and Alfred M. Saperston, Executors of the Estate of Albert F. Meyer, Appellees,

v.

UNITED STATES of America, Appellant.

No. 302, Docket 25501.

United States Court of Appeals Second Circuit.

Argued June 2, 1959.

Decided Sept. 4, 1959.

Certiorari Granted Jan. 11, 1960.

See 80 S.Ct. 373.

John J. Pajak, Department of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Robert N. Anderson, Department of Justice, Washington, D. C., John O. Henderson, U. S. Atty., and William I. Schapiro, Asst. U. S. Atty., Western District of New York, Buffalo, N. Y., on the brief), for appellant.

Richard H. Wile, Buffalo, N. Y. (Saperston, McNaughtan & Saperston, Buffalo, N. Y., on the brief), for appellees.

Before CLARK, Chief Judge, and LUMBARD and WATERMAN, Circuit Judges.

LUMBARD, Circuit Judge.

This appeal by the United States from a final judgment of the District Court for the Western District of New York, Justin C. Morgan, J., presents the single question whether an estate is entitled to an estate tax marital deduction, § 812(e) (1) (A), Internal Revenue Code of 1939, 26 U.S.C.A. § 812(e) (1) (A), for a portion of the proceeds of a policy of life insurance upon the life of the deceased spouse when the whole proceeds are held by the insurer under a settlement option of the policy, the terms of which provide that the surviving spouse shall receive monthly payments for the remainder of her life, but that if she should die before the expiration of twenty years then the decedent's daughter shall receive the payments until twenty years have elapsed. The district court found that that portion of the total proceeds allocable to the funding of a contingent life annuity from and after twenty years after the decedent's death qualified for the marital deduction. It was agreed by the parties that in no event would the portion of the proceeds necessary to fund the twenty years of monthly payments certain qualify for the deduction.

We hold that no part of the proceeds so held by the insurer qualifies for the

estate tax marital deduction, and accordingly we reverse the decision below.

The relevant facts are stipulated and may be briefly stated. The decedent held two life insurance policies on his own life, the total proceeds of which at his death were $30,207.10. Both policies were payable to his wife, Marion E. Meyer. The decedent elected substantially identical payment options under the policies prior to his death on September 14, 1952.[1] By the terms of the option selected in each policy his surviving wife was assured of monthly payments for the remainder of her life; but by the terms of each it was also agreed that 240 monthly payments would be made in any event and that they would be made to designated beneficiaries in the event that although the decedent's wife was living at his death, she did not survive to receive them all. In both policies the decedent's daughter, Shirley A. Meyer, was the person primarily designated to receive the guaranteed payments in the event of the death of her mother in less than twenty years. Both decedent's wife and daughter survived him.

It was further stipulated and found that upon decedent's death the insurance companies concerned separately determined as a matter of their business practice the portion of the total proceeds required to fund the twenty years of payments certain, and both determined the sum required to fund the contingent life annuity for Marion Meyer from and aft-er twenty years. The refund sought and recovered by the executors was $2,339.-72, which is the decrease in the estate tax which would result from increasing the marital deduction by $8,238.54, the total amount determined by the two insurers as required to fund the contingent life annuity. Neither insurance contract provided, and the decedent did not request, that there be any segregation of the proceeds of the policy between the amounts computable for the term certain and the amounts computable for funding the contingent life annuity. Both of the policies provide that the policy and the application therefor constitute the entire contract between the parties.

On this appeal appellees rely exclusively on the authority of In re Reilly's Estate, 3 Cir., 1957, 239 F.2d 797 where it was determined that insurance proceeds held under what are for present purposes substantially identical contracts could be divided into two "properties" as that term is used in § 812(e) (1) (B) (i) and (ii). As a consequence it was held that the amount needed to fund the contingent life annuity qualified for the marital deduction because, although "terminable" within the meaning of the preamble to § 812(e) (1) (B), no "interest" in that separate property passed to any person other than the surviving spouse so that the conditions of § 812(e) (1) (B) (i) and (ii) for disqualification of the gift to the spouse were not fulfilled. No oth-

---

1. The options elected respectively provided:

[1] "10. Option C: To have the whole or any designated part of the net proceeds paid in either 120, 180 or 240 stipulated monthly minimum installments of the amount stated in the Continuous Installment Table corresponding to the sex and the age of the then beneficiary on the date of payment of the first of such installments, provided that if such beneficiary shall survive to receive the number of stipulated installments selected, payments of like amount and frequency shall continue during the lifetime of the beneficiary. The table shall apply pro rata per $1000 of the amount to be so paid, the first installment being payable as of date of death of Insured or the date of election if subsequent. If there be two more beneficiaries the amount payable, unless otherwise directed by the designator, shall be divided into a corresponding number of equal parts and the installments to each beneficiary will be similarly determined according to age and sex by the Continuous Installment Table. Payment under this option shall be subject to satisfactory proof of the age of the beneficiary thereunder.

\* \* \* \* \*

[2] "Option 3—Life Income. Equal payments for a stipulated number of years and thereafter as long as the payee shall live, the amount of such payments to be upon the age at nearest birthday of the payee at the date of maturity of the policy."

er court of appeals appears to have considered this question.

Since appellee concedes that the wife's interest in the portion of the total proceeds necessary to fund the payments for twenty years certain is disqualified, the sole question is whether, as the Third Circuit held, the proceeds may be separated into two separate properties. Section 812(e) (1) (A) and (B) distinguish between property and an interest in property, and the Senate Committee Report, S.Rep. 1013 (part 2), 80th Cong., 2d Sess. (1948), U.S.Code Cong.Service 1948, p. 1225, expressly comments upon the distinction:

> "The terms 'interest' and 'property,' as used in section 812(e) have separate and distinct meanings. The term 'property' is used in a comprehensive sense and includes all objects or rights which are susceptible of ownership. The term 'interest' refers to the extent of ownership * * * by the surviving spouse or other person, of particular property. For example, if the surviving spouse is specifically devised an estate for her life in a farm, the 'interest' passing to her is the life estate, and the 'property' in which such interest exists is the farm. * * * Thus, in the case of a bequest, devise, or transfer of an interest which may be satisfied out of, or with the proceeds of, any property of the decedent's general estate or of a trust, the interest so bequeathed, devised, or transferred is an interest in any and all of such property. * * * *"

> "As previously stated, it is necessary for the purposes of section 812 (e) (1) to distinguish between an interest in property and the property in which such interest is an interest. Thus if the decedent devises Blackacre to his wife for life with remainder to X, then X has an interest in the property (Blackacre) in which the surviving spouse has an interest. If the principal value of Blackacre was a coal mine which

may be expected to be exhausted during the surviving spouse's life, nevertheless both the surviving spouse and X have an interest in the property, which is Blackacre. * * * In the case of a trust or fund, the income beneficiaries and the persons who may receive any part of the corpus have an interest in the property represented by the assets of the trust or fund as of the date of the decedent's death."

Although we think these examples speak clearly to the instant case to define the insurance proceeds as a single fund in which the wife has been granted a life estate with a remainder in the daughter, it is at least arguable on the basis of this alone that, as the Third Circuit found, the proceeds may be divided and the wife's interest treated as twofold: a life estate in one property, the payments certain, and a contingent life annuity in the other. But such doubt as we might otherwise entertain on this question is resolved by another portion of the same report in which in a specific example the present situation is expressly dealt with. After dealing at length with the provisions of (B) the Report states:

> "The same principles apply in the case of insurance proceeds and annuity contracts, as illustrated by the following examples:

> "*Example (1)*. The entire proceeds of an insurance policy on the life of the decedent are payable to the surviving spouse and the value of such proceeds is included in determining the value of the gross estate. *A marital deduction is allowed* with respect to the value of the proceeds *because no person other than the surviving spouse has an interest in the proceeds. The result will be the same whether such proceeds* are payable in a lump sum; are payable in installments to the surviving spouse, her heirs, or assigns, for a term; or *are payable to the surviving spouse for her life with no refund of the undistributed proceeds or with*

*such a refund to her estate.* * * *"*
(Emphasis added.)

This example makes it plain that "proceeds" is identical with "property" at least in the situation treated by it, since the spouse's "interest" is referred to as an interest in the "proceeds" and not in a portion of them; and all possible doubt on this score is resolved by the specific example of a refundable life annuity in the entire proceeds given to the wife, in which instance it is clearly stated that the wife's interest will qualify *if* the refund is to be made to her estate.

The next subsequent example deals with annuities, and, if that is possible, even more clearly defines the contract creating the annuity as a single property:

"*Example (2)*. The decedent during his lifetime purchased an annuity contract under which the annuity was payable during his life *and then to his spouse during her life if she survived him*. The value of the interest of decedent's surviving spouse in such contract at the death of the decedent is included in determining the value of his gross estate. *A marital deduction is allowed* with respect to the value of such interest so passing to the decedent's surviving spouse *inasmuch as no other person has an interest in the contract*. If upon the death of the surviving spouse the annuity payments were to continue for a term to her estate, or the undistributed portion thereof was to be paid to her estate, the deduction is nevertheless allowable with respect to such entire interest. *If, however, upon the death of the surviving spouse, the payments are to continue to another person (not through her estate) or the undistributed fund is to be paid to such other person, no marital deduction is allowable inasmuch as an interest passed from the decedent to such other person.*"
(Emphasis added.)

Thus considered both as a dedication of the entire proceeds to the creation of a refundable life annuity with the refund in someone other than the wife's estate, or considered as the dedication of the proceeds to the purchase of a refundable life annuity, the present case falls squarely within unambiguous examples given by the responsible Senate Committee.

Even if we assume that had the contract provided for the segregation of the separate funds they could then have been considered separate properties, it is stipulated here and the contracts reveal that no such segregation was provided for. In a similar situation we have rejected the view that what might have been accomplished at the outset, but was not, ought nevertheless to be regarded as having been done. See Hoffenberg v. Commissioner, 2 Cir., 1955, 223 F.2d 470, affirming 1954, 22 T.C. 1185.

We do not agree with the Third Circuit that the example given in the Report of a gift to the decedent's wife and daughter as tenants in common of the decedent's interest in a patent, as to which it is clearly stated that the wife's interest qualifies for the estate tax marital deduction, is in any way inconsistent with the view that the patent is a single property, or that, conversely, the example may be said to support the view that the patent, by virtue of the gift, became two separate properties. The Report expressly states that the interest given to the wife qualifies because it does not come within § 812(e) (1) (B) (ii) although it is a terminable interest under (i). The reason it does not come within (ii) is we think that the daughter's possession and enjoyment of her interest in the single property take place at once, and not "after" the termination of the wife's terminable interest, and not because there were two properties created.

We are similarly unpersuaded by resort to the analogy of § 812(e) (1) (G), which creates an exception from the terminable interest rule when, *inter alia,* the surviving spouse is given a power of appointment over the residue of the proceeds. While it is true, as the Third Circuit noted, that Regulation 105, § 81.--

47(a) (d) (2) contemplates the division of insurance proceeds into separate funds held by the insurer, it cannot be said that the Regulation contemplates that the resulting funds may be considered to be separate properties. It is perfectly consistent with the Regulation that it applies to an instance, such as that of a tenancy in common between the surviving spouse and another, in which although two interests are thus created in the single property, the wife's interest, because of § 812(e) (1) (G), is not disqualified. For example, if the surviving spouse received a life estate in one-half the proceeds with a power to appoint the remainder, and another person received one-half outright, the wife's interest would qualify if the life estate and the power met the requirements of § 812 (e) (1) (G), while without (G) it may be assumed that it would not.

Moreover, even if the Regulation might be said to be in some manner inconsistent with the view we have taken, we would not accord it great weight. It interprets and gives effect to a special exception to the terminable interest rule for powers of appointment over the proceeds of life insurance and annuity contracts. It would be hazardous, in the face of the convincing evidence for the contrary result, to reason in the present case from a policy concerning powers of appointment, especially because the statute in part (G) conditions the granting of the exception for powers of appointment on the fulfillment of special requirements not otherwise present. Thus, *inter alia*, payments to the surviving spouse under the option must commence not later than thirteen months after the decedent's death, a limitation conspicuously lacking here.

Reversed.

WATERMAN, Circuit Judge (dissenting).

I cannot join with the majority in their disposition of this appeal. I would affirm the result below and would follow, as did the district court, D.C.W.D.N.Y. 1958, 166 F.Supp. 629, the lead of the Third Circuit in In re Reilly's Estate, 3 Cir., 1957, 239 F.2d 797.

It is, and was stated in one of the exhibits attached to and made part of the parties' stipulation to be, the accounting and actuarial practice of the life insurance industry to do exactly what the companies here did. Upon the death of Mr. Meyer, under the settlement options he chose, each of the two companies set aside two distinct funds—each company estimating the amounts needed in each fund by reference to Mrs. Meyer's life expectancy as set forth in the applicable Mortality Table. In each case, one of these funds, the first one, was to provide payments certain for twenty years. If Mrs. Meyer died during this twenty year period the payments certain were to be made to another beneficiary. The status of these two first funds is not involved in this appeal. It is agreed they do not qualify for the estate tax marital deduction. In each case the other fund, the second one, was set aside to finance payments payable only to Mrs. Meyer for as long as she might live after the expiration of the twenty years and after the exhaustion of the first fund. These payments were not to begin until the twenty-year period had elapsed. There was no contingent beneficiary. If Mrs. Meyer died during the twenty year period the insurance companies would each pocket the full amount of this second fund. If she died after she began to draw against the fund, but before it had been exhausted, each company would pocket the unexhausted sums. On the other hand, if Mrs. Meyer lived longer than her life expectancy and thereby exhausted the second fund the insurance companies were obligated to continue to pay her out of company money the agreed payments until her death.

It seems clear that the money needed to fund the payments for twenty years certain, and that needed to fund the continuing life long payments, were necessarily required to be kept separate and constituted separate entities. They were for different purposes, purposes contemplated by Mr. Meyer when he chose the

particular settlement option that he chose, and their separation was required in order that neither Mr. Meyer nor the companies be disadvantaged in the execution of the settlement plan. Therefore, of what possible materiality can it be that this segregation of funds was not spelled out in the settlement contract? Or that Mr. Meyer didn't specifically request a division?

To be sure, they were both settled for the primary purpose of providing installment payments to the surviving spouse during her lifetime. But there the similarity ceases and the dissimilarity is so marked that I think it error to consider that in each case these two funds were but one property. If the interest of the surviving spouse in the property constituting the first fund should happen to terminate or fail by her death the balances remaining in that fund could pass without consideration to the contingent beneficiary. But the second fund was not so settled. While the interest of the surviving spouse in the property constituting the second fund might also terminate or fail by her early death those balances would pass for "an adequate and full consideration in money or money's worth" to the insurance companies with whom the settlor had bargained on the chance that his widow would outlive her life expectancy and receive excess payments.

Hence I would hold that the portions of the proceeds of Mr. Meyer's insurance policies that by contract with him were set aside to fund payments to Mrs. Meyer after the twenty-year period had elapsed qualified for the allowance of the estate tax marital deduction. I believe this result is consistent with the purpose of Section 812(e) (1)—to make the tax treatment of married persons in community property and non-community property states more nearly uniform—and surely the arrangement with which we are dealing does not provide an avenue for abuse of the marital deduction provi-

sion. Consequently, since "[i]n expounding a statute, we must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy," United States v. Boisdore's Heirs, 1849, 8 How. 113, 122, 12 L.Ed. 1009; Mastro Plastics Corp. v. National Labor Relations Board, 1956, 350 U.S. 270, 285, 76 S.Ct. 349, 359, 100 L.Ed. 309; National Labor Relations Board v. Lion Oil Co., 1957, 352 U.S. 282, 288, 77 S.Ct. 330, 1 L.Ed.2d 331, I would affirm the court below.

I interpret the difference between my colleagues and me to turn on the fact that they are unwilling to consider as done what actually was done. They believe that, because there was no specific contract authorizing segregation, it is improper for estate tax purposes to divide the insurance proceeds into two funds. I am sure that if they agreed with me that two funds are permissible, they also would agree that the estate of Mr. Meyer would be entitled to the benefit of the marital deduction to the extent of the funds before us on this appeal. The specific wording of the Code's applicable provisions so provide. See 1954 I.R.C. § 2056(b) (1) (A) and (B), 26 U.S.C.A. § 2056(b) (1) (A, B); 1939 I.R.C. § 812(e) (1) (B) (i) and (ii), 26 U.S.C.A. § 812(e) (1) (B) (i, ii). See also Reg. 105, § 81.47a(b) (2) and (3). The benefits of the marital deduction are deniable to a terminable interest only where a remainder interest in the entire property passes to some person other than the surviving spouse for less than adequate consideration, and this other person may thereupon possess or enjoy the remainder interest after the termination of the wife's present interest. I think we would all agree that unless there are additional rights created in a property entity for the benefit of third parties the interests passing to the surviving wife in that property entity are entitled to and should be accorded the benefit of the marital deduction.