MEYER ET AL. *v.* UNITED STATES.

No. 13.   Argued October 12, 1960.—Decided November 21, 1960.

*Donald S. Day* argued the cause for petitioners.   On the brief was *Alfred M. Saperston.*

*I. Henry Kutz* argued the cause for the United States. With him on the brief were *Solicitor General Rankin, Assistant Attorney General Rice* and *John J. Pajak.*

MR. JUSTICE WHITTAKER delivered the opinion of the Court.

Petitioners, who are executors of the estate of Albert F. Meyer, brought this suit to recover an alleged overpayment of federal estate taxes and the District Court granted

the relief asked. 166 F. Supp. 629. The Court of Appeals reversed, 275 F. 2d 83, and we granted the executors' petition for certiorari, 361 U. S. 929, because of a conflict of decisions in the circuits. Cf. *In re Reilly's Estate*, 239 F. 2d 797, decided by the Court of Appeals for the Third Circuit.

Two policies of life insurance are involved,[1] but since they are in all material respects identical, we need deal with only one of them. The policy obligated the insurer to pay a death benefit of $25,187.50, and that sum was included by the executors in the federal estate tax return and the tax thereon was paid. The decedent had selected an optional mode of settlement which provided for the payment of equal monthly installments to his wife for her life, with 240 installments guaranteed, and further provided that if the wife should die before receiving the 240 installments his daughter would receive the remainder of them, but if both the wife and the daughter died before receiving the 240 installments the commuted value of those unpaid was to be paid in one sum to the estate of the last one of them to die.

Of the total proceeds of the policy of $25,187.50, the insurer determined that $17,956.41 was necessary to fund the 240 monthly payments to the wife, the daughter, or to the estate of the last survivor of them, and that the remaining $7,231.09 was necessary to fund the monthly payments to the wife so long as she might live beyond the 240 months. Accordingly, the insurer made such entries on its books.

Thereafter petitioners, as executors, timely filed a claim for refund of the amount of the tax paid upon the

---

[1] One of the policies was issued by Northwestern Mutual Life Insurance Company in the amount of $25,187.50, and the other was issued by John Hancock Mutual Life Insurance Company in the amount of $5,019.60.

$7,231.09 which the insurer had shown upon its books as necessary to fund the monthly payments to the wife for her actuarial expectancy beyond the 240 months certain, on the theory that the insurer's treatment of that sum on its books created a separate "property" or fund payable to the wife alone, and hence it qualified for the marital deduction under § 812 (e)(1) of the Internal Revenue Code of 1939.[2] The claim was denied, and this suit was brought to recover the tax that had been paid on that sum.

Petitioners correctly concede that if the policy constitutes but one "property," within the meaning of the statute,[3] it would not qualify for the marital deduction

---

[2] Section 812 (e) provides in relevant part:

"(1) ALLOWANCE OF MARITAL DEDUCTION.—

"(A) In General.—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

"(B) Life Estate or Other Terminable Interest.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

"(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

"(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; . . ."

[3] "The terms 'interest' and 'property,' as used in section 812 (e) have separate and distinct meanings. The term 'property' is used in a comprehensive sense and includes all objects or rights which are susceptible of ownership. The term 'interest' refers to the extent of ownership, that is, to the estate or the quality and quantum of ownership by the surviving spouse or other person, of particular property." S. Rep. No. 1013, Part 2, 80th Cong., 2d Sess., p. 4.

because the wife's interest in it would be a "terminable" one, within the meaning of the statute, inasmuch as the wife may die before receipt of the 240 guaranteed installments, in which event the unpaid ones must go to the daughter if then living. They concede, too, that the $17,956.41, shown on the insurer's books as necessary to fund the monthly payments for the 240 months certain, does not qualify for the marital deduction for the same reasons. But they contend that, although the policy made no provision therefor, the insurer's bookkeeping entries constituted a real division of the insurance proceeds into, and created, two "properties"—one of $17,956.41 and the other of $7,231.09—and that the latter qualifies for the marital deduction under the statute because it is payable, if at all, only to the wife—during her lifetime beyond the 240 months—and no other person has any interest in it.

Whether a policy of life insurance may create several "properties" or funds, either terminable or nonterminable or both, we need not decide, for we think the policy here involved constituted only one property, and made only so much of its proceeds payable to the wife as she might live to receive in equal monthly installments, and made any guaranteed balance payable to the daughter. Hence, under the terms of the policy, the "interest passing to the surviving spouse [may] terminate or fail" and a "person other than [the] surviving spouse . . . may possess or enjoy [a] part of such property after such termination or failure of the interest so passing to the surviving spouse; . . ." Therefore the policy and its proceeds—considered apart from petitioners' claim that the insurer's bookkeeping division of the proceeds of the policy into two parts created two "properties"—are disqualified for the marital deduction by the express provisions of § 812 (e)(1)(B) of the Internal Revenue Code of 1939.

414

The legislative history of the section further supports and compels this conclusion. Illustrating applications of the terminable interest rule, the Senate Committee Report gave an example that is in no relevant way distinguishable from this case,[4] and makes it very clear that the marital deduction is not allowable in the case of an annuity for the surviving spouse for life if "upon the death of the surviving spouse, the payments are to continue to another person (not through her estate) or the undistributed fund is to be paid to such other person . . . ."

We think petitioners' argument—that the insurer's bookkeeping division of the proceeds of the policy into two parts created two properties—cannot withstand the provisions of the policy and the actual facts respecting the insurer's bookkeeping division of its proceeds, under the clear terms of the statute and its legislative history. The policy made no provision for the creation of two separate properties—one a property sufficient to provide payments for 240 months, to the wife while she lived and any

---

[4] "*Example (2).* The decedent during his lifetime purchased an annuity contract under which the annuity was payable during his life and then to his spouse during her life if she survived him. The value of the interest of the decedent's surviving spouse in such contract at the death of the decedent is included in determining the value of his gross estate. A marital deduction is allowed with respect to the value of such interest so passing to the decedent's surviving spouse inasmuch as no other person has an interest in the contract. If upon the death of the surviving spouse the annuity payments were to continue for a term to her estate, or the undistributed portion thereof was to be paid to her estate, the deduction is nevertheless allowable with respect to such entire interest. *If, however, upon the death of the surviving spouse, the payments are to continue to another person (not through her estate) or the undistributed fund is to be paid to such other person, no marital deduction is allowable inasmuch as an interest passed from the decedent to such other person.*" (Emphasis added.) S. Rep. No. 1013, Part 2, 80th Cong., 2d Sess., pp. 12–13.

remainder to the daughter, and another property sufficient to provide an annuity to the wife for the period of her actuarial expectancy beyond the 240 months—and no such separate properties were in fact created. The allocations made were merely actuarial ones—mere bookkeeping entries—made by the insurer on its own books for its own convenience after the insured, the other party to the contract, had died. The wife and the daughter were, respectively, primary and contingent beneficiaries *of the policy* alone. Neither of them had any title to, nor right to receive, any special fund, and indeed none was actually created. The bookkeeping entries made by the insurer no more created or measured their rights than the insurer's erasure of those entries—which it was free to make at any time—would destroy their rights. Their rights derive solely from the policy. It, not the insurer's bookkeeping entries, created and constitutes the property involved. Any action by the beneficiaries to enforce their rights against the insurer would have to be upon the policy, not upon the entries the insurer had made on its books for its own actuarial information and convenience. Nor would exhaustion of the sum of those entries constitute any defense to the insurer against the claim of either beneficiary for amounts due her under the policy.

The proceeds of the policy were not payable to the wife (or to her estate or appointee) alone and at all events, but were payable in monthly installments to her for life, and if any obligation under the policy remained undischarged at her death it was payable to the daughter if living or, if not, to the estate of the last of them to die. It follows that the "interest passing to the surviving spouse [may] terminate or fail" and that a "person other than [the] surviving spouse . . . may possess or enjoy [a] part of such property after such termination or failure of the interest so passing to the surviving spouse; . . ."

and hence the property is disqualified for the marital deduction by the express provisions of § 812 (e)(1)(B) of the Internal Revenue Code of 1939.

*Affirmed.*

MR. JUSTICE DOUGLAS, with whom MR. JUSTICE CLARK and MR. JUSTICE BRENNAN concur, dissenting.

The decedent had two life insurance policies in two separate companies; and each provided for the payment of the proceeds in 20 annual instalments by monthly payments to decedent's wife, Marion E. Meyer, if living, and thereafter during her lifetime. If the wife was not living at decedent's death, the instalments were to be paid to a daughter. If the wife died after decedent and before payment in full of the instalments, any remaining instalments were to be payable to the daughter. If the wife lived beyond the 20 years, she would be entitled to like monthly payments for her life. Decedent was survived by his wife and daughter, the wife being then 42 years old.

The insurance companies calculated the sums necessary to provide the designated monthly payments for 20 years: $17,956.41 in the case of one policy and $4,012.24 in the case of the other. They then computed the amount necessary to provide a monthly income to the wife in the event she lived beyond the 20-year period: $7,231.09 for one policy; $1,007.36 for the other.

Neither of the policies provided (and decedent did not request) that there be any segregation of the proceeds between the amounts computable for the term certain and for funding of the contingent life annuity.[1] The amounts required to provide monthly payments for 20 years—$17,956.41 and $4,012.24—were not claimed as

---

[1] It was said, however, on oral argument the insurance companies maintained for their own records separate accounts as to the 20-year monthly income provisions and the contingent life annuity of the wife, without any segregation of funds.

marital deductions. This controversy concerns only the amount needed to fund the contingent life annuities of the wife—$7,231.09 plus $1,007.36, or $8,238.45, which the executors claim as a marital deduction.

Concededly the amount necessary to make the 20-year payments does not qualify as a marital deduction because it may "terminate or fail" within the meaning of the Code,[2] the daughter being entitled to any remaining payments during that term should the wife die before it terminates. The daughter, however, has no *interest* in the annuities payable beyond the 20-year period. And it seems to me that the wife's "interest" in that part of the insurance contracts does not "terminate or fail" within the meaning of § 812 (e)(1)(B).[3]

If the decedent had taken out *one group of policies* to pay instalments for 20 years to his wife or, if she died within that period, to his daughter, and *another group of*

---

[2] Section 812 (e), I. R. C., 1939, as added by Revenue Act of 1948, § 361, 62 Stat. 110, 117, provides in relevant part:

"(1) ALLOWANCE OF MARITAL DEDUCTION.—

"(A) In General.—An amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.

"(B) Life Estate or Other Terminable Interest.—Where, upon the lapse of time, upon the occurrence of an event or contingency, or upon the failure of an event or contingency to occur, such interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed with respect to such interest—

"(i) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and

"(ii) if by reason of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse; . . ."

[3] See note 2, *supra*.

*policies* to pay instalments to his wife for life if she lived more than 20 years, the former would be nondeductible, but the latter would qualify for the marital deduction.[4] Does then the continuation of the two types of insurance in one policy change the result? The Government maintains that it does because in its view the entire insurance proceeds of each policy are a single "property" as that term is used in the statute; and the Court so holds. Yet, with all deference, that conclusion is wide of the mark.

The Senate Report states that terminable *interests* include all *interests* that are subject to contingencies and conditions.[5] Yet these contingencies and conditions are not all-inclusive. They do not include the death of the transferee. And, as I shall show, contingencies of the kind we have here are not included.

The Court, with all deference, errs in making its decision turn on whether the wife's *interest* after the 20-year term is a separate "property" within the meaning of the statute. The ruling of the Court is on a statutory provision that does not exist. Under the statute the question is not whether "property" is terminable; it is whether an "interest" is terminable. The statute indeed draws a marked distinction between "property" and "interest."[6]

---

[4] The Court of Appeals in *In re Reilly's Estate, supra,* correctly noted that the purpose of the marital deduction under this Act was "to make more nearly uniform the tax treatment of married persons in community property and non-community property states." *Id.,* at 799. The assets not taxable in the estate of the first spouse to die may be taxed at the death of the survivor. In other words, the property in the marital community is subject to the tax only once in the estate of either.

[5] S. Rep. No. 1013, 80th Cong., 2d Sess., Pt. 2, p. 7.

[6] "The terms 'interest' and 'property,' as used in section 812 (e) have separate and distinct meanings. The term 'property' is used in a comprehensive sense and includes all objects or rights which are susceptible of ownership. The term 'interest' refers to the extent

Section 812 (e)(1)(A) speaks not of "property," but of any "interest" in property. Section 812 (e)(1)(B) speaks only of an "interest passing to the surviving spouse" that will "terminate or fail." The statute at these points is concerned with "interest" in property—not with "property." Yet the Court, disregarding the statutory scheme, looks only to "property" and finding but one insurance policy denies the deduction.

Plainly there may be more than one "interest" in a single "property." A deduction is not denied merely because the surviving spouse and someone else each have an "interest" in the same "property." S. Rep. No. 1013, 80th Cong., 2d Sess., Pt. 2, p. 8. The Senate Committee gave several examples: ". . . if the decedent by his will devises Blackacre to his wife and son as tenants in common, the marital deduction is allowed, since the surviving spouse's interest is not a terminable interest." [7]

There seems to me to be a like separation of *interests* in the present case. These insurance policies created, of course, no fund or *res*. The sum of $21,968.65 representing the wife's terminable *interest* and the $8,238.45 representing her other *interest* were, of course, no more segregated in the insurance companies' assets than a customer's checking account is segregated in a commercial bank. Yet that seems immaterial. Each represented a chose in action. The wife or daughter, as the case might be, could sue for the one during the 20-year period. Only the wife could enforce the claim here in question.

That the proceeds of one life insurance policy may create two or more "interests" for purposes of the estate tax is implicit in the Senate Report. Thus one example of a marital deduction that is given is an annuity pay-

---

of ownership, that is, to the estate or the quality and quantum of ownership by the surviving spouse or other person, of particular property." S. Rep., *supra*, Pt. 2, p. 4.

[7] *Id.*, at 8.

able to the decedent during his life and to his spouse during her life if she survived him.

"The decedent during his lifetime purchased an annuity contract under which the annuity was payable during his life and then to his spouse during her life if she survived him. The value of the interest of the decedent's surviving spouse in such contract at the death of the decedent is included in determining the value of his gross estate. A marital deduction is allowed with respect to the value of such interest so passing to the decedent's surviving spouse inasmuch as no other person has an interest in the contract. If upon the death of the surviving spouse the annuity payments were to continue for a term to her estate, or the undistributed portion thereof was to be paid to her estate, the deduction is nevertheless allowable with respect to such entire interest. If, however, upon the death of the surviving spouse, the payments are to continue to another person (not through her estate) or the undistributed fund is to be paid to such other person, no marital deduction is allowable inasmuch as an interest passed from the decedent to such other person." *Id.,* pp. 12–13.

The last sentence of the foregoing quotation, on which the Court relies, describes with accuracy the terminable "interest" of the wife in that part of the annuity payable during the 20-year period after the death of the decedent. It has no relevancy to the "interest" with which we are here concerned, *viz.,* the instalments payable after that 20-year period.

My conclusion is that where the "interest" that accrues to the surviving spouse is, as here, shared with no one else and is subject to no termination except her own death, it qualifies for a marital deduction under this statute, even though another "interest" of hers in the same annuity contract would not qualify.