E. O. BOCKWALTER, District Director of Internal Revenue, Appellant,

v.

Marie PHELPS, Executrix of the Estate of Calvin N. Phelps, Deceased, Appellee.

No. 17339.

United States Court of Appeals Eighth Circuit.

Dec. 11, 1963.

Arthur E. Strout, Atty., Tax Division, Dept. of Justice, Washington, D. C., for appellant; Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, Robert N. Anderson, Morton K. Rothschild, Attys., Dept. of Justice, Washington, D. C., and also F. Russell Millin, U. S. Atty., Kansas City, Mo., and William Kitchen, Asst. U. S. Atty., Kansas City, Mo., on the brief.

Clarence O. Woolsey, Springfield, Mo., for appellee.

Before VAN OOSTERHOUT and BLACKMUN, Circuit Judges, and DAVIES, District Judge.

VAN OOSTERHOUT, Circuit Judge.

This is an appeal by the District Director of Internal Revenue from final judgment entered against him in favor of estate taxpayer for refund of estate taxes erroneously assessed and paid. All jurisdictional requirements relating to the bringing of this action and the taking of this appeal have been met.

The issue presented by this appeal is whether the widow's allowance made by the probate court to the surviving spouse under Missouri law in the form of a lump sum award of $20,000, which in fact has been paid to the surviving spouse, qualifies for the marital deduction under § 2056 I.R.C.1954. More specifically, the issue is whether the Missouri widow's allowance here involved is a terminable interest and hence not subject to the marital deduction.

The case was tried to the court without a jury. The court held the estate was entitled to a marital deduction upon the widow's allowance and entered judg-

ment for the refund. The Government, as a basis for reversal, states:

"Since a support allowance made by the probate court to the decedent's widow pursuant to the probate code of Missouri was conditioned upon her being alive at the time it was payable, it constitutes a terminable interest under Section 2056(b) (1) of the Internal Revenue Code of 1954, and therefore may not be included in the marital deduction for federal estate tax purposes."

Judge Oliver, in a memorandum opinion reported at 210 F.Supp. 801, rejects the Government's contention that the Missouri widow's allowance here involved is a terminable interest. He points out that Missouri adopted a new probate code in 1955 and that no Missouri interpretation has been made of the widow's allowance provision of the 1955 Code. Judge Oliver sets out the statutory law existing prior to the adoption of the 1955 Code and with respect to the interpretation of such earlier provisions states:

"Monahan v. Monahan's Estate (1936) 232 Mo.App. 91, 89 S.W.2d 153, 155, 156, construing the Missouri law as it stood before the enactment of the new Missouri Probate Code, held:

" '(O)ur courts, from a very early day, have, with remarkable unanimity, held that * * * the money allowed * * * became the absolute property of the surviving widow or widower, as the case may be, free from the claims of creditors or distributees or other beneficiaries of the estate. * * * (T)he right to an allowance out of the estate * * * inures in the surviving spouse.

\* \* \* \* \*

" 'It is certain that under the established rule of decision in this state the widow's allowances are regarded as her absolute property; and

not to be considered as assets of the estate.' " 210 F.Supp. 801, 802–03.

The parties to this appeal do not question the foregoing as being a proper statement of Missouri law as it existed prior to the enactment of the 1955 Code.

The court then sets out §§ 474.260 and 474.300, 26 V.A.M.S., which contain the new Code provisions relating to widow's allowances and carefully considers the legislative history of such statutes, the report of the Joint Probate Laws Revision Committee to the legislature, and Law Review articles written by persons closely associated with the probate law revision, and comments:

"We are not at all sure that had we been sitting on a Missouri court we would have decided Monahan in the manner that it was decided. But we have no doubt about what a Missouri court did hold in Monahan. Nor do we have any doubt that no one connected with the drafting and passage of the new Probate Code ever dreamed that they were changing the rule of Monahan. We likewise are most doubtful that any Missouri court would hold that a single sentence in Section 474.300 was intended to and did in fact change the rule of Monahan. We are therefore required to find that the interest created by Section 474.-260 is unaffected in substance by the language relating to that section in Section 474.300 and that the rule of decision announced in Monahan is still the law of Missouri, at least so far as the facts of this case involving a lump sum payment are concerned, and that plaintiff should prevail." 210 F.Supp. 801, 807.

■ It is well established that the nature and character of a widow's right to receive an allowance from the estate of her husband must be determined upon the basis of state law. Jackson v. United States, 9 Cir., 317 F.2d 821; United States v. Quivey, 8 Cir., 292 F.2d 252; Rev. Rul. 83, 1953—1 Cum.Bull. 395.

■■ We have often stated that we will accept the view of an experienced trial judge upon doubtful questions with respect to the law of his state unless we are convinced that the trial court's determination is based upon a clear misconception or misapplication of local law. Venn v. Goedert, 8 Cir., 319 F.2d 812, 814; National Bank of Eastern Ark. v. General Mills, Inc., 8 Cir., 283 F.2d 574, 576–77; Homolla v. Gluck, 8 Cir., 248 F.2d 731, 734. This is because the power to establish state law and interpret state statutes rests in the highest court of the state and an able and experienced federal trial judge, residing in the state, by reason of his close association with the development of the law of the state is ordinarily in a better position to predict the course the appellate courts of his state will follow when and if the doubtful question is presented to it than is this court.

We are not here able to say that the trial court erroneously interpreted or applied the law with respect to the survival of widows' allowances upon the death of the widow. The Government places considerable reliance upon our decision in Quivey, supra. Many distinctions exist between our present case and Quivey. We are here considering Missouri law, not Nebraska law. The Missouri statutes differ materially from the Nebraska statutes. In Quivey, we based our holding that the widow's allowance was a terminable interest upon decisions of the Nebraska Supreme Court interpreting Nebraska statutes. No comparable Missouri case law here exists.

Schubel v. Bonacker, Mo., 331 S.W.2d 552, relied upon by the Government, does not compel a reversal here. Schubel dealt exclusively with homestead rights. Homestead is one of three rights allowed a surviving spouse in Missouri and is afforded by § 474.290, V.A.M.S. Section 474.250 provides for the right of absolute property, and § 474.260 provides for the family allowance. Such rights are separate and distinct and are governed by separate statutes. The court, in its opinion in Schubel, observes that the new homestead statute is in lieu of dower and former homestead rights and that neither of such rights under prior law survived the death of the surviving spouse. Schubel does not deal with the widow's allowance situation and is not persuasive authority with respect to the widow's allowance situation. See Estate of Gardner v. United States, E.D.Mo., 220 F.Supp. 196, 198.

■ The trial court in reaching its decision in our present case gave full consideration to all of the issues urged by the Government on this appeal. The court in its well-considered opinion marshals all material bearing upon the legislative intent and carefully analyzes and considers all such material. Such material strongly supports the trial court's conclusion. The Government has failed to demonstrate that the trial court misinterpreted or misapplied Missouri law in reaching its decision that under Missouri law the statutory allowance for the surviving spouse is not a terminable interest.

Additional support for the trial court's opinion upon the disputed issue of state law here exists. Estate of Oliver B. Avery, 40 T.C. 392, involved a lump sum Missouri widow's allowance made and paid to the widow. The Tax Court followed Judge Oliver's interpretation of Missouri law, citing his opinion in the case now before us, and held the widow's allowance was not a terminable interest, stating:

"In the present case the allowance was paid in a lump sum, there were no minor children, and there is no provision in the Missouri statute authorizing a recovery by the estate of any part of the allowance in case of the early death of the widow. Cases involving installment allowances have no application. We conclude that the widow's allowance here was not a terminable interest. It is includable as a part of the marital deduction."

Judge Meredith, an able Missouri trial judge, was confronted with the problem here presented in Estate of Gardner v.

United States, E.D.Mo., 220 F.Supp. 196. Judge Meredith discusses and approves Judge Oliver's interpretation of the Missouri widow's allowance statute and states, at p. 198:

> "The Court finds that a spouse's allowance under the Missouri law is vested immediately on death. That it may be applied for after the death of the surviving spouse. It is not terminable on the happening of any contingency. It qualifies as a deduction under § 2056 of the Internal Revenue Code of 1954."

The judgment is affirmed.

BLACKMUN, Circuit Judge (dissenting).

I respectfully dissent. My concern is not so much with V.A.M.S. § 474.260 which authorizes a reasonable allowance for a surviving widow for her "maintenance during the period of one year after the death of the spouse" and which provides that that allowance "may be made payable in one payment or in periodic installments, and shall be made payable to the surviving spouse, if living, for the use of such surviving spouse * * *." If that statute were the only one before us, I might perhaps be persuaded, despite its "if living" condition, that this estate is entitled to a marital deduction for the allowance granted to Mrs. Phelps. That result would then be due to the interpretation the Saint Louis Court of Appeals gave the section's different but nevertheless somewhat similar predecessors in the 1929 Revised Statutes, Monahan v. Monahan's Estate, 232 Mo.App. 91, 89 S.W.2d 153 (1936), and to the legislative history of this particular section so effectively employed by Judge Oliver in his opinion at 210 F.Supp. 801.

But we are not now to live with § 474.260 alone. We also have § 474.300. This is a new statute without predecessors. It first appeared in 1955 long after Monahan was decided. Its first sentence reads:

> "When a surviving spouse dies, * * * no allowance shall be made

under section 474.260 for his maintenance for any period after such death * * *."

This language is clear, definite, and unambiguous. I think it is inescapable. It must and can only mean that if the surviving widow dies she is not entitled to allowance for any period after her death.

For purposes of the marital deduction the situation is to be viewed as of the date of the decedent's death (in this case, June 30, 1956), and not as of some subsequent date as, for example, when the probate court's maintenance order issues (in this case, October 3, 1956, "for the first year's support"). United States v. Quivey, 292 F.2d 252, 255 (8 Cir. 1961); Bookwalter v. Lamar, 323 F.2d 664 (8 Cir. 1963); Cunha's Estate v. Commissioner, 279 F.2d 292, 297 (9 Cir. 1960), cert. denied, 364 U.S. 942, 81 S.Ct. 460, 5 L.Ed.2d 373; United States v. Mappes, 318 F.2d 508, 510–11 (10 Cir. 1963). It would then appear necessarily to follow, from the language of the statute, that maintenance for Mrs. Phelps was contingent and dependent upon her continuing survivorship. In other words, her claim for maintenance was an interest terminable within the concept of § 2056 (b) (1) of the Internal Revenue Code of 1954 and was not indefeasibly vested as of her husband's death. Being terminable, it fails to qualify as a marital deduction. Whether the probate court's maintenance order called for periodic payments or for a lump sum is therefore of no consequence whatsoever.

But we are told (a) that the Missouri legislature, by its general revision of the state's probate laws in 1955, and hence by the specific enactment of § 474.300, did not intend to change the nature of the spouse's right to maintenance as it had been characterized in Monahan, and (b) that the district court's conclusion is a permissible one not to be disturbed on appeal.

For me the answer to the intent argument is the plain and unambiguous language of the first sentence of § 474.300. The intent argument is a negative one,

namely, that because commentators of the 1955 code, in mentioning proposed substantive changes, did not ·refer to § 474.300, the section therefore embraced no change. This does not convince me where language is so clear and. so positive. I am fortified in this by the fact that § 474.300 was not part of the proposed probate revision presented to the legislature by the Revision Committee but, instead, "was inserted by legislative amendment". Consequently, comments on the code as proposed could not possibly be directed to § 474.300. I am further fortified by the recent decision of the Supreme Court of Missouri in Schubel v. Bonacker, 331 S.W.2d 552 (1960), a case not cited by the district court here. It is true that that case concerned the homestead allowance under § 474.290 rather than the family allowance under § 474.260. But the court there held that even the homestead allowance was not vested indefeasibly and automatically; in any event the case did concern certain aspects of § 474.300 and the court dwelt upon and emphasized historical background and purpose, pp. 554–55 of 331 S.W.2d. A similar emphasis on purpose of the widow's allowance would bring into focus the condition of continuing survivorship. Also, I doubt if it is a question, as the district court has suggested, p. 805 of 210 F.Supp., whether the state legislature "intended fundamentally to change the nature of a widow's allowance from a non-terminable interest * * * to a terminable interest". It would seem that federal estate tax impact was not in the legislature's mind at all; if it had been, Missouri decedents' estates would surely have been clearly protected and the plain and self-defeating language of § 474.300 would not have been permitted and employed. The important and inescapable facts are that the section's first sentence exists and that it is unambiguous.

I fully appreciate the great caution which this court and its members, including myself, have exercised in diversity cases (which this is not) in upsetting the careful judgment of a federal trial judge upon a doubtful question of the law of his state. See Village of Brooten v. Cudahy Packing Co., 291 F.2d 284, 288–89, 301 (8 Cir. 1961); Campbell v. Village of Silver Bay, 315 F.2d 568, 575 (8 Cir. 1963). My concern is not alleviated by my awareness that a second Missouri federal district judge has now reached the same conclusion (although not mentioning § 474.300) on the issue before us, Gardner's Estate v. United States, 220 F.Supp. 196 (E.D. Mo.1963), and that the Tax Court has done the same, Estate of Oliver, B. Avery, 40 T.C. 392, 400–401 (1963). Each of these opinions, as I read them, relies upon and follows the decision of the trial court in the present case. This court has not hesitated, nevertheless, when occasion demands, to reverse a federal trial judge on a question of state law if we have felt that his holding was improbable or less than "permissible". See, for example, Massachusetts Bonding & Ins. Co. v. Julius Seidel Lumber Co., 279 F.2d 861, 869 (8 Cir. 1960); Archer-Daniels-Midland Co. v. Paull, 293 F.2d 389, 397 (8 Cir. 1961); L. C. Eddy, Inc. v. City of Arkadelphia, 303 F.2d 473 (8 Cir. 1962). And very recently this court, in another marital deduction case turning on Missouri law, where language of a will was "plain, clear and unambiguous", reversed the experienced Missouri federal judge who tried that case below. Bookwalter v. Lamar, supra. We did exactly the same thing, too, although another state's law was involved, in United States v. Quivey, supra, 292 F.2d 252.

I am inclined to think that the trial court and the majority here are overly concerned with § 474.260, that they have overlooked or are under-concerned with § 474.300 and with its first sentence, and that they have rendered that sentence meaningless. We too readily avoid here the consequences of the specific terminable interest standard which conditions the marital deduction. After all, the burden of proof in this refund action is upon the taxpayer estate. Industrial Aggregate Co. v. United States, 284 F. 2d 639, 644 (8 Cir. 1960), and cases cited;

English v. United States, 270 F.2d 876, 879 (7 Cir. 1959). That burden, in my opinion, has not been met.

My personal dissatisfaction and distaste with making state law the criterion for terminability was set forth in my concurring opinion in United States v. Quivey, supra, p. 256 of 292 F.2d. See, also, Chief Judge Chambers' concurrence in Jackson v. United States, 317 F.2d 821, 826 (9 Cir. 1963), certiorari granted, October 28, 1963. But if we must live with such a variable standard, then it seems to me that a plain statute ought to be given its plain meaning. If Quivey was right, and I think it was, this case is wrong. I would reverse.